UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>DESHAWN A. RAY,<br><br>Movant. | No. 2:11-cr-00216 MCE KJN<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

I.     Introduction

Movant is a federal prisoner, proceeding, without counsel,[1] with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  Movant challenges his 2014 convictions for conspiracy to commit bank fraud (18 U.S.C. §§ 1344, 1349 [count one]), two counts of bank fraud (18 U.S.C. § 1344 [counts 2-3]), and aggravated identity theft (18 U.S.C. § 1028A(a)(1) [count 5]).  He is currently serving a sentence of 145 months.

In his motion, movant challenges his sentence, asserting ineffective assistance of trial counsel, as well as ineffective assistance of appellate counsel.  (ECF No. 1.)

//

---

[1] Movant is represented by counsel regarding separate requests related to a motion to vacate and/or reduce sentence pursuant to 18 U.S.C. § 2582(c)(1).  (See ECF Nos. 378 & 422.)  Those motions are not the subject of these findings.

1

## II. Brief Factual and Procedural Background

Movant and others participated in an "account takeover" scheme, between 2008 and 2010, whereby certain bank customer accounts, at a number of different financial institutions, were identified and targeted for fraud. Movant and his coconspirators used existing unrelated accounts, or opened new customer accounts themselves, to then create joint accounts between the existing or new accounts and the targeted legitimate bank customer accounts, before transferring and subsequently withdrawing the fraudulently obtained monies, without the targeted account owners' permission or knowledge, for their own purposes.

Movant was arrested following a May 12, 2011, indictment. (ECF Nos. 1 & 12.) He entered not guilty pleas, was appointed counsel from the Federal Defender's office, and was thereafter released on bail after posting bond. (ECF Nos. 7-10.) In July 2011, movant retained attorney Julius Engel. (ECF No. 18.)

Ultimately, following a second superseding indictment (ECF No. 73), jury trial commenced on December 8, 2014. (ECF No. 148.) The jury reached its verdicts on December 11, 2014, finding movant guilty as to all counts alleged. (ECF No. 156.)

On February 5, 2015, attorney Engel was relieved as counsel of record and movant's request to proceed pro se was granted. (ECF No. 176.) Shortly thereafter, at movant's request, the court appointed attorney Scott Tedmon to represent movant in post-trial and sentencing proceedings. (ECF Nos. 203-04.)

A motion for new trial was filed August 20, 2015 (ECF No. 223); the government opposed the motion and movant replied (ECF Nos. 237 & 244). Following a hearing, District Judge Morrison C. England, Jr. denied the motion for new trial. (ECF No. 250.)

On January 21, 2016, movant was sentenced to a total term of 145 months in federal prison. More specifically, as to counts one, two and three, movant was sentenced to a term of 121 months; a consecutive term of 24 months was imposed as to count five. (ECF Nos. 260-61, 301.) Thereafter, attorney Tedmon was relieved as counsel for movant pending the filing of a notice of appeal. (ECF No. 260.)

////

1    Attorney Krista Hart was appointed to represent movant on appeal and a notice of appeal
2    was filed on February 3, 2016. (ECF Nos. 262-63.)

3    A stipulation and order regarding restitution was filed April 12, 2016, wherein it was
4    agreed movant "shall be [jointly and severally] liable for restitution in the amount of
5    $191,891.24." (ECF No. 298.)

6    Movant's motion for bail pending appeal was heard and denied on March 23, 2017. (ECF
7    Nos. 311-317.)

8    On August 23, 2017, the Ninth Circuit Court of Appeals ordered the matter remanded for
9    the limited purpose of the district court providing a "written or oral explanation of reasons" for its
10   denial of movant's motion for bail pending appeal. (ECF No. 318.)

11   On August 31, 2017, Judge England filed a Statement of Reasons. (ECF No. 319.) On
12   May 24, 2018, the Ninth Circuit affirmed movant's convictions. (ECF No. 321.)

13   Movant filed the instant motion on November 21, 2018. (ECF No. 324.) The government
14   filed its opposition on February 7, 2019 (ECF No. 328), and movant replied on February 28, 2019
15   (ECF No. 330).

16   III.   Legal Standard

17   A federal prisoner making a collateral attack against the validity of his or her conviction
18   or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28
19   U.S.C. § 2255, filed in the court that imposed sentence. Tripati v. Henman, 843 F.2d 1160, 1162
20   (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that
21   the prisoner was sentenced in violation of the Constitution or laws of the United States. United
22   States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255). Relief is
23   warranted only where a movant has shown "a fundamental defect which inherently results in a
24   complete miscarriage of justice …." Davis v. United States, 417 U.S. 333, 346 (1974) (quoting
25   Hill v. United States, 368 U.S. 424, 429 (1962)).

26   Where a section 2255 motion is based on alleged occurrences outside the record, no
27   hearing is required if the allegations, viewed against the record, either fail to state a claim for
28   relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. Shah v.

United States, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal citations & quotations omitted). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of the documentary testimony and evidence in the record." Id. at 1160. Ultimately, "[s]ection 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." Id. at 1159.

IV.   Consideration of Movant's Claims

### Ground One: Ineffective Assistance of Trial Counsel

In his first ground for relief, movant claims trial counsel provided ineffective assistance of counsel during the plea bargaining stage, causing movant to "suffer an additional 51 months" in custody. (ECF Nos. 324 at 9-14 & 330 at 1-5.) The government argues trial counsel did not provide ineffective assistance of counsel, thus precluding relief in these proceedings. (ECF No. 328 at 9-12.)

More specifically, movant complains trial counsel failed to investigate and/or understand the fact his prior driving under the influence conviction would impact any potential sentence, telling movant the conviction would have no effect, and by incorrectly assessing the weight of the evidence against movant.

#### Applicable Legal Standards

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Under the first prong of the Strickland test, a petitioner must show that counsel's conduct failed to meet an objective standard of reasonableness. Strickland, 466 U.S. at 687. There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must rebut this presumption by demonstrating that his counsel's

performance was unreasonable under prevailing professional norms and was not the product of "sound trial strategy." Strickland, 466 U.S. at 688-89. Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at the time it occurred, without the benefit of hindsight. Id. at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

The second prong of the Strickland test requires a petitioner to show that counsel's conduct prejudiced him. Strickland, 466 U.S. at 691-92. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. at 693. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." Id.

Additionally, the United States Supreme Court has confirmed that the Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). In Lafler, the Supreme Court addressed the situation where ineffective advice led to the rejection of a plea offer and held:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 566 U.S. at 164.

To prevail on such a claim, a movant must demonstrate "'gross error on the part of counsel,'" Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (quoting McMann v. Richardson, 397 U.S. 759, 772 (1970)), and that the advice he received from his counsel was "so

5

incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer.'" Id. (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992) (noting "that familiarity with the structure and basic content of the Guidelines...has become a necessity for counsel who seek to give effective representation").) The relevant question is not whether "counsel's advice [was] right or wrong, but...whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann, 397 U.S. at 771 (holding that all defendants facing felony charges are entitled to the effective assistance of competent counsel).

In the context of plea negotiations, the prejudice inquiry is whether there is a "reasonable probability" that "but for counsel's bad advice the outcome of plea bargaining would have been different." Perez v. Rosario, 459 F.3d 943, 948 (9th Cir. 2006) (citing Hill v. Lockhart, 474 U.S. 52, 56-59 (1985)); see also Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003) (where trial counsel gave petitioner "wrong information and advice" about the plea offer, petitioner "needed only to demonstrate that he had sufficient evidence for a reasonable fact finder to conclude with 'reasonable probability' that he would have accepted the plea offer"). It "does not require certainty or even a preponderance of the evidence," but only a "reasonable probability" that the result would be different. United States v. Day, 969 F.2d at 45 n.8.

Analysis

Movant was presented plea offers in March and September of 2013. (ECF No. 237-1 at ¶ 5.) He declined both offers. (ECF No. ECF No. 237-2 at ¶¶ 14-16, 18-19.) Movant contends here that he declined both offers because counsel "did not investigate whether [his] DUI conviction would impact his sentence," resulting in erroneous advice as to the "range of punishment" movant faced, and because counsel's "assessment of the evidence against" movant was "also wrong." (ECF No. 324 at 11-13.)

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the Strickland prongs. See Strickland, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one). Here, the undersigned elects to proceed to an analysis of the prejudice prong.

1    Establishing Strickland prejudice requires movant to "prove there was a reasonable

2 probability he would have accepted the offer." Jones v. Wood, 114 F.3d 1002, 1012 (9th Cir.

3 1997). Notably, in his reply to the government's opposition to his motion for new trial, movant

4 stated the following:

> In his motion, Mr. Ray raised the issue of trial counsel's ineffective representation in failing to adequately advise Mr. Ray regarding the government's plea offer. The government opposed this issue, in part, on the basis that unless Mr. Ray is now willing to accept the prior plea offer, he cannot establish prejudice. After further consideration, Mr. Ray is not willing to accept the government's prior plea offer even if it was extended to him. Therefore, Mr. Ray agrees that prejudice cannot be established as a result of trial counsel's failure to adequately advise him of the government's plea offer. As such, Mr. Ray withdraws this argument from his Rule 33 motion for new trial.

11 (ECF No. 244 at 6.)

12    The district court's written order denying movant's motion for new trial, states the

13 following:

> Defendant contends that his legal representation was "so inadequate" that his case fits within one of the exceptions to the general rule that IAC claims are better suited to habeas proceedings. Defendant abandons, however, a number of his substantive arguments. More specifically, Defendant withdraws his arguments based on Trial Counsel's alleged pretrial failure to investigate or to discuss the Government's plea offers with Defendant because he acknowledges that he cannot show prejudice.

19 (ECF No. 255 at 6.)

20    In the pending motion, movant declares he "would have accepted the government's

21 second plea offer" but for trial counsel's advice (ECF No. 324 at 22) and that "[b]ased on the

22 submission presented in this proceeding, Ray respectfully moves this Honorable Court to grant

23 him relief on this claim and order the Government to reinstate its second plea offer, thereby

24 effectively amending his sentence to reflect a total term of 94 months." (ECF No. 324 at 14).

25    Following the government's opposition and its reference to the aforementioned, movant

26 replied that his earlier declination to state a willingness to accept the plea was due to his pursuit

27 of "a new trial under Rule 33." (ECF No. 330 at 3.) Movant continued, asserting "the decision to

28 withdraw the claim was smart, no matter what the stated reason was. In fact, had the claim not

7

been withdrawn, the court's denial of relief would have triggered the doctrine of issue preclusion, thereby barring Ray from raising it here." (ECF No. 330 at 4.) Movant is mistaken.

The doctrine of issue preclusion would not have barred movant from raising the issue presently before the court in this proceeding. See Johnson v. Lumpkin, 769 F.2d 630, 636 & n. 16 (9th Cir. 1985) (claim and issue preclusion are not available in federal habeas corpus proceedings) (citing Sanders v. United States, 373 U.S. 1, 8 (1963)). Issue preclusion would not have prevented consideration of movant's claim in this proceeding and was not a basis for withdrawing his claim that trial counsel was ineffective for inadequately advising him regarding the consequences of his plea.

Movant concluded: "As evidence[d] by the record, [he] would have accepted the second offer but for the misinformation given to him by his former, now disbarred, lawyer, Mr. Engel." (ECF No. 330 at 5.) But movant's reference to "the record" is solely to his now pending motion, rather than record evidence that at the time of trial or even at the time of the motion for new trial, movant would have been willing to accept the government's plea.

In fact, record evidence from the relevant period indicates otherwise. Mr. Engel's declaration indicates the two "discussed the pros and cons of taking the [March 2013] plea offer or going to trial," and that Engel explained to movant "that much of the case would be proven with paper evidence, and that the primary element the government would not be able to prove with documentary evidence would be [movant's] scienter." Engel explained to movant there was "a chance that going to trial could result in a hung jury or an acquittal." (ECF No. 237-2 at 3, ¶ 15.) Months later, on August 31, 2013, Engel advised the government that movant "was not likely to plea." (ECF No. 237-2 at 3, ¶ 16.) When the government provided a plea offer in September 2013, Engel again "explained the government's plea offer" to movant, and on September 5, 2013, movant told Engel that he would not accept the latest offer "and that he maintained his innocence." (ECF No. 237-2 at 4, ¶ 19; see also ECF No. 237-1 at 37 [Engel's email that movant "has maintained his innocence all along—his intent is to go to trial that is [w]hat he told me this morning," movant "has always insisted on his innocence" and that his failure to accept a plea offer was "not a tactic"].) Following a reverse proffer meeting in late

8

1    January 2014, wherein the government "set out the details of the government's planned case
2    against" movant, Engel further "explained the government's final offer of plea terms in light of
3    the evidence set out by the prosecutor at the reverse proffer session," and movant "rejected the
4    offer a second time." (ECF No. 237-2 at 4, ¶ 20.)

5    In the government's March 20, 2012, correspondence to trial counsel, the following was
6    stated: "Assuming Mr. Ray has a criminal history of "I" (I am aware of only a single DUI which
7    will not place him into Category "II"), his guideline range for the fraud counts would be 135 to
8    168 months in prison." (ECF No. 237-1 at 10 [Exhibit B].)  In its March 2013 plea offer, the
9    potential maximum sentence for a plea of guilty to count one was "30 years of incarceration" and
10   that count five carried "a mandatory two year sentence" that was required to run consecutively to
11   any sentence imposed for count one. (ECF No. 237 at 21 [Exhibit C].)  No reference is made to
12   any application category.  In its September 2013 "best" offer, the government noted a guideline
13   range for count one of "63 to 78 months (assuming Criminal History Category I)," as well as the
14   mandatory and consecutive 24 months for count give, for a total range of "87 to 102" months.
15   (ECF No. 237-1 at 41.)  As reflected in the presentence report, "a criminal history category of II"
16   applied because while movant's only prior criminal conviction was in fact a prior driving under
17   the influence conviction from 2008, he was on probation for that offense at the time he committed
18   the instant offenses. (ECF No. 169 at 9, ¶¶ 35-38.)  It is clear from the record that both the
19   government and defense counsel were operating under the assumption that movant's criminal
20   history category was a one (I).

21   A review of movant's motion for new trial makes no reference to trial counsel's purported
22   failure with regard to the criminal history category and movant's prior DUI conviction and/or his
23   having been on probation for that offense when he committed the instant offenses.  Rather, it
24   argues counsel's deficiency took the form of a failure to communicate the risk of increased
25   exposure as between accepting the best plea offer versus going to trial. (ECF No. 223 at 17-20 &
26   223-1 at 1-6 [movant's declaration].)  And, the record reveals that even after the government's
27   "best" offer was relayed, movant was intended to go to trial absent "a more palatable deal." (ECF
28   No. 237-1 at 37.)

9

In any event, the plea offer reviewed by movant and counsel, and ultimately rejected by movant, stated the following: "The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive." (ECF No. 237-1 at 17.)

It can be reasonably inferred from other information in this record that movant would not have entered a plea prior to trial because he intended to finish his undergraduate degree,[2] where movant was set to do so in December 2014, the same month the matter was set to be tried, and movant had been pursuing either an associate or bachelor's degree throughout these proceedings. (See ECF No. 270 at 8 [at arraignment on 5/16/11, it was stated movant "was a full-time student" "pursuing an associate of arts degree"]; ECF No. 285 at 3 [during status conference of 5/19/11: discussion regarding educational pursuits and pretrial services comment that movant change major]; ECF No. 275 at 3 [at status conference of 7/10/14: "My client finishes California State University with his bachelor's degree on December 11th"]; ECF No. 289 at 3 [at trial confirmation of 11/6/14: "My client, he's finishing up his schooling. December 15th is the last day"] & 5 [a December 1st trial date "is helpful to his schedule as well"]; see also ECF No. 141 at 2 [defense motion filed 12/3/14: "Counsel is also informed and believes by his client that client has a final exam December 9th. He is set to graduate California State University shortly"] & 4 ["It is also in the interests of all concerned that defendant be able to take his final exam to complete his bachelor's degree on December 9, 2014"].) Additionally, the record includes the following information:

> Prior to being remanded into custody in December 2014, Ray was enrolled at California State University East Bay in Hayward, California. Enrollment was verified by Ray's pretrial services officer on March 2, 2012, and again on December 26, 2012. School transcripts were received by pretrial services on April 1, 2014, *verifying that Ray was enrolled in his eighth quarter and had completed seven quarters between Spring 2012 and Winter 2014.* According to the defendant, he is one class away from earning his Bachelors of Science degree in kinesiology.

(ECF No. 169 at 12, italics added.)

---

[2] Movant had been released on bond following his initial appearance of May 16, 2011, and remained so until the jury returned its verdicts. (See ECF Nos. 7 & 151.)

Pleading guilty prior to trial, even ignoring other record references to movant's maintaining his innocence, would not have allowed for movant's near completion of a bachelor's degree while released on bond, where movant faced a significant period of incarceration even with the government's best plea offer.

To the degree movant argues Engel "incorrectly assessed the weight of the evidence" against him, and was therefore ineffective, his claim fares no better. Engel's declaration states Engel "explained to [movant] that much of the case would be proven with paper evidence, and that the primary element that the government would not be able to prove with documentary evidence would be [movant]'s scienter." (ECF No. 237-2 at 3, ¶ 15.) A review of the record supports Engel's assessment. In any event, counsel is not required to accurately predict what the court might find, to give an accurate prediction of the outcome of the case, or to have "a crystal ball." Turner, 281 F.3d at 881.

In sum, the only indication that movant would have pled guilty to the government's best offer is movant's self-serving statement in this proceeding. See Turner v. Calderon, 281 F.3d at 881 (self-serving statements alone are insufficient to establish constitutional violations because otherwise "every rejection of a plea offer, viewed perhaps with more clarity in the light of an unfavorable verdict, could be relitigated upon the defendant's later claim that had his counsel better advised him, he would have accepted the plea offer"). Movant has not demonstrated that he would have accepted the plea, or the government's best offer, but for counsel's alleged ineffectiveness. Lafler v. Cooper, 566 U.S. at 163; Jones v. Wood, 114 F.3d at 1012.

As for movant's assertions that defense counsel was ineffective because counsel was facing disciplinary proceedings and has since been disbarred (ECF No. 324 at 11), a consultation of the California State Bar's website concerning Julius Engel's licensure status reveals he was admitted to the bar in December 1988. And relevant to the time period at issue here – circa 2012 through the trial in December 2014 - on November 8, 2013, disciplinary charges were filed in State Bar Court, case number 12-O-15773. As a result of that proceeding, on July 8, 2016, Engel

////

////

was suspended for a period of six months following adjudication.[3] While additional disciplinary proceedings were filed and adjudicated, resulting in further suspension periods and ultimately disbarment on May 1, 2020, those proceedings are not relevant here.[4]

<http://members.calbar.ca.gov/fal/Licensee/Detail/137759 (accessed Mar. 23, 2021)>.

Significantly, there was but a single disciplinary proceeding relevant to the time period during which Engel represented movant. And, Engel's suspension as a result of that proceeding did not occur until some sixteen months after Engel's representation of movant has already concluded. During the entire time period Engel represented movant, his license to practice law was active and no suspension had been imposed.

Thus, Mr. Engel was not disbarred or suspended at the time he represented movant. And, even if he had been, this fact alone would not constitute ineffective assistance of counsel. See United States v. Ross, 338 F.3d 1054, 1055 (9th Cir. 2003) (stating that a lawyer suspended or disbarred during trial is not per se ineffective); United States v. Hoffman, 733 F.2d 596, 600-01 (9th Cir. 1984) (rejecting a per se rule that representation by a lawyer suspended from practice by a state bar automatically amounts to ineffective assistance); see also Kook v. Cate, 2013 WL 4041363, at *7 (C.D. Cal. June 14, 2013) ("To show a Sixth Amendment violation by a lawyer suspended from the practice of law during criminal proceedings, Petitioner must identify 'actual errors and omissions by counsel that a conscientious advocate would not have made, and show that [he] suffered prejudice from those errors,' under the standards set forth in Strickland....") (citation & internal quotations omitted).

As discussed above, movant has not demonstrated that his counsel provided ineffective assistance. Even assuming Engel's performance was deficient, movant has not met his burden on

---

[3] The matters adjudicated involved allegations of Engel's commingling funds in a client trust account, failure to perform legal services with competence and failure to return unearned fees in a bankruptcy proceeding, a failure to notify client in a separate bankruptcy proceeding, and acceptance of attorney fees from a third party without the client's written consent in two separate criminal matters.

[4] State Bar Court case number 14-O-3742 was initiated November 2, 2015, and concerned discipline arising from Engel's handling of a bankruptcy matter, and his failure to report a civil judgment entered against him related to his handling of a separate bankruptcy matter.

Strickland's prejudice prong. It is not enough "'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Richter, 562 U.S. at 104 (citing Strickland). At bottom, movant has not shown "a fundamental defect which inherently results in a complete miscarriage of justice …." Davis, 417 U.S. at 346. As a result, the undersigned recommends movant's claim be denied.

### *Ground Two: Ineffective Assistance of Appellate Counsel*

In his second ground for relief, movant argues appellate counsel provided ineffective assistance of counsel by failing to argue that the district court erred in failing to address attorney Tedmon's objection to the perjury enhancement applied at sentencing. (ECF Nos. 324 at 15-18 & 330 at 6-11.) The government contends appellate counsel was not ineffective, barring movant's relief in these proceedings. (ECF No. 328 at 9, 12-17.)

#### Applicable Legal Standards

A habeas claim alleging appellate counsel was ineffective is evaluated under Strickland. See Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Again, to establish ineffective assistance of counsel, petitioner must prove: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 687-94, 697. As the high court has observed, appellate counsel performs properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim. Jones v. Barnes, 463 U.S. 745, 752 (1983); Smith v. Murray, 477 U.S. 527, 536 (1986). "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." Davila v. Davis, 137 S.Ct. 2058, 2067 (2017). "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989). The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Even if petitioner could demonstrate his appellate attorney acted unreasonably,

13

he must still show prejudice. Smith v. Robbins, 528 U.S. 259, 285-86 (2000). "That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to [argue the district court failed to make express findings regarding the obstruction of justice enhancement imposed at sentencing], he would have prevailed on his appeal." Robbins, at 285-286 (citing Strickland, 466 U.S. at 694).

### Analysis

In the draft Presentence Investigation Report (PSR) dated January 29, 2015, at page 7, paragraph 15, a two-level increase was included, under the heading Adjustment for Obstruction of Justice, and read as follows:

> During the trial, Ray, took the stand to testify. According to transcripts, the defendant was asked about his knowledge of the fraud he was involved in. Ray testified he thought the business he was involved in with Thomas was legitimate. In addition to denying knowledge of the bank fraud, Ray was asked about his intention of stealing money from any individuals, stealing anyone's identity, and if he had ever used anyone else's identification for the purpose of committing bank fraud. The defendant answered each of these questions in the negative. Since the jury found Ray guilty on all counts, it appears they found his testimony not credible and/or untruthful. Given that Ray was under oath, it would appear he committed perjury when answering these questions untruthfully. Therefore, pursuant to USSG §3C1.1, and USSG §3C1.1. comment. (n.4(F)), a two-level increase will be applied for obstructing the administration of justice.

(ECF No. 169 at 7 [see also at 8, ¶ 25].) During the period following the guilty verdicts wherein movant represented himself, on March 6, 2015, he filed pro se objections to the PSR. (ECF No. 191.) In response to the two-level increase for obstruction of justice in particular, movant wrote "The jury found me guilty because of 'IAC.' (Ineffective Assistance of Counsel)" and "I object! I told the truth." (ECF No. 191 at 2-3.) He signed his objections under penalty of perjury. (ECF No. 1919 at 3.) The final PSR was filed March 12, 2015. (ECF No. 192.) The paragraphs at issue remained unchanged from the draft version. (ECF No. 192 at 7 [¶15] & 8 [¶25].)

Attorney Tedmon was then substituted in as movant's counsel in April 2015 (ECF No. 204) and filed objections to the PSR on January 7, 2016 (ECF No. 253). Relevant here, these objections included the following:

////

> OBJECTION RE: PAGE 8, PARAGRAPH 25: Pursuant to USSG §3C1.1, the PSR recommends a 2-level increase for obstruction of justice based on the fact Mr. Ray testified in his own defense and was convicted. While it is true the jury did not find Mr. Ray's testimony credible as he was convicted, Mr. Ray contends he did not wilfully obstruct justice during his testimony and requests the Court strike this 2-level increase.

(ECF No. 253 at 3.) A Sentencing Memorandum was filed one week later addressing the seven factors to be considered pursuant to 18 U.S.C. § 3553(a). (ECF No. 257.) In its Sentencing Memorandum, the government argued the two-level increase for obstruction of justice applied because movant "committed perjury at trial by testifying falsely that he did not know the account takeover scheme was fraud." (ECF No. 258 at 5.) Moreover, the government argued:

> Ray's defense at trial was that he lacked the intent to defraud. When he testified, Ray's story was that he was a naïve and unwitting participant in the account takeover scheme. He told the jury that he participated in the scheme, believing it was "legitimate" and designed to obtain money for his record label. Ray's falsehood included the following:
>
> • He was not aware that the scheme in which he participated was fraud. ECF No. 165 at 86:23-25, 88:14-22, 93:14-21, 123:2-5, 131:11-12.
>
> • He did not intend to cheat anyone out of money. *Id*. at 95:21-23.
>
> • He did not receive any of the proceeds of the account takeover scheme. *Id*. at 120:24-121:1.
>
> • He believed the fraudulent transactions and withdrawals were part of an elaborate investment strategy that Thomas devised to obtain money from unidentified investors to finance Ray's record label, DNA Records. *Id*. at 73:15-17, 75:3-16, 79:2-10, 91:21-22, 94:11-14, 113:5-20.
>
> Ray's story was a lie. His account was directly contradicted by the testimony of Thomas (ECF No. 211 at 154:13-155:6), Easterwood (ECF No. 165 at 53:13-54:1), and the runners that Ray recruited and managed, Hill (*id*. at 46:8-11), and Melena (*id*. at 56:7-19), all of whom acknowledged that the fraudulent nature of the scheme was readily apparent. To reach a guilty verdict on the charged counts, the jury had to reject Ray's testimony concerning his knowledge of the fraudulent nature of the scheme and his intent to defraud. The Court should similarly find that Ray testified falsely, and apply the 2-level enhancement for obstruction of justice.

(ECF No. 258 at 5-6.)

During the sentencing hearing on January 21, 2016, the district judge stated he had "read and

considered" the PSR dated March 12, 2015 (ECF No. 291 at 2) and had also reviewed the "written objections" and responses to the PSR (ECF No. 291 at 3). The district judge thereafter indicated: "the Court will adopt the statements of material fact, sentencing classification, advisory guideline ranges and policy statements and determine them to be true and correct," and noted the "obstruction of justice plus two" increase. (ECF No. 291 at 3.) The court also acknowledged it had read the sentencing memoranda. (ECF No. 291 at 4-5.) Counsel for movant and the government addressed the court before movant exercised his right of allocution. (ECF No. 291 at 5-8.) The court thereafter stated:

> Just sitting here listening today, it's very clear, Mr. Ray, that you are an intelligent man. You have a lot going for you.
>
> Unfortunately, you took that intelligence and everything that you had going for you and went off onto this scheme to commit bank fraud in conjunction with another individual, and you were, of course, quite successful at it. Then once you were caught, you decided to - - and, again, there is nothing wrong with exercising your constitutional rights to have a jury trial - - but rather than accept responsibility early you decided to do that.
>
> And once you have a jury trial, that gives the Court, as well as the jury, the opportunity to observe you, and watch you, and listen to you. And it was clear from this Court's perspective that what was being said here on the witness stand was not always completely truthful, and that there were times that you were trying to weave a certain story to try to make yourself look better. And it wasn't something that I would consider anything that I would want to give you a break for.

(ECF No. 291 at 8-9.)

When imposing a sentencing enhancement for obstruction of justice, the district court must make express findings that defendant's testimony was false, material and willful. United States v. Castro-Ponce, 770 F.3d 819, 822 (9th Cir. 2014). And, a district court may not adopt the findings of the PSR in lieu of making explicit factual findings on the elements of perjury for the obstruction of justice enhancement. United States v. Herrera-Rivera, 832 F.3d 1166, 1175 (9th Cir. 2016).

In movant's case, the district judge referenced the PSR,[5] which addresses the falsity,

---

[5] Movant takes exception to the PSR's use of the phrase "it appears he committed perjury." But viewed in context, the language refers to the fact the court is tasked with making such a finding rather than the probation officer.

materiality and willful elements by virtue of its references to movant's trial testimony denying any knowledge of the fraudulent scheme, as well as movant's denial of any intent to steal money or another individual's identity. Attorney Tedmon's written objections regarding this issue, which the district judge also acknowledged and considered, contended movant "did not wilfully obstruct justice." The government's sentencing memorandum laid out movant's falsehoods, specifically citing to movant's testimony addressing its materiality and falsity by noting movant's "story" told while testifying was "a lie." Then the district judge stated movant's testimony at trial was "not always completely truthful, and that there were times that [movant was] trying to weave a certain story to try to make [himself] look better."

Taken altogether, the undersigned finds the district court's adoption of the PSR, the written objections and memoranda considered, and the district judge's statements on the record at the time of sentencing, accord with the required findings of United States v. Castro-Ponce, 770 F.3d at 822. United States v. Thomsen, 830 F.3d 1049, 1074 (9th Cir. 2016) (district court addressed elements of perjury, including falsity, intent, and materiality, in applying obstruction of justice sentencing enhancement to defendant's sentence for various crimes related to tax fraud scheme, and thus court did not erroneously apply enhancement, where court recognized falsity of defendant's testimony, court's findings encompassed intent to provide false testimony when it recognized that defendant gave false testimony in an attempt to exonerate himself, and court's findings encompassed materiality element when it found that the false testimony was intended to suggest that defendant was not person who committed the offenses); United States v. Taylor, 749 F.3d 842, 846-848 (9th Cir. 2014); see also United States v. Cuenca, 692 Fed.Appx.[6] 857, 858-859 (9th Cir. 2017) ("Though the district court did not discuss each element of the obstruction of justice enhancement on the record, its adoption of the findings in the PSR regarding falsity, materiality, and willfulness were sufficient for the purposes of *Castro-Ponce*").

Because a review of the record reveals the district judge complied with the requirements

---

[6] Pursuant to Ninth Circuit Local Rule 36-3, unpublished dispositions issued on or after January 1, 2007, may be cited to the courts of the Ninth Circuit in accordance with Fed. R.App. P. 32.1 but are not precedent.

of Castro-Ponce before enhancing movant's sentence for obstruction of justice, appellate counsel was not deficient for failing to raise this issue on appeal. Davila v. Davis, 137 S.Ct. at 2067; Babbitt v. Calderon, 151 F.3d at 1173; Miller v. Keeney, 882 F.2d at 1434. And for those same reasons, there is no reasonable probability that, had appellate counsel so argued, movant would have prevailed on his appeal. Smith v. Robbins, 528 U.S. at 285-286; Strickland, 466 U.S. at 694.

For the reasons described above, movant is not entitled to relief on his claim of ineffective assistance of appellate counsel. Movant has not shown "a fundamental defect which inherently results in a complete miscarriage of justice …." Davis, 417 U.S. at 346. Therefore, the undersigned recommends movant's claim be denied.

V.   Conclusion

IT IS HEREBY RECOMMENDED that:

1. Movant's November 21, 2018 motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied; and

2. The Clerk of the Court be directed to close the companion civil case No. 2:18-cv-03703 MCE KJN.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the

////

////

specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 31, 2021

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/ray0216.257